KOEHLER, APPELLEE, *v.* HONERKAMP, APPELLANT.

(No. 7583—Decided June 9, 1952.)

*Messrs. Cors, Scherer, Hair & Hartsock,* for appellee.

*Messrs. Dickerson, Hermerding & Ahrens,* for appellant.

*Per Curiam.* This is an appeal from a judgment for the plaintiff, rendered upon a verdict for $10,000 in his favor, which he alleged was due him for producing a ready, willing, and able buyer to whom the defendant sold his business.

In his amended petition, the plaintiff alleged that the defendant owned the capital stock of Honerkamp Motor Sales, Inc., an Ohio corporation; that on or about the first day of April, 1950 (this date was later changed to March 16, 1950), the defendant entered into an oral agreement with the plaintiff, whereby the plaintiff was an agent to sell "the business hereinbefore referred to and known as Honerkamp Motor Sales, Inc., for and on behalf of the defendant, at a price of about $250,000, for which the defendant agreed to pay to the plaintiff a commission of $10,000, and that the plaintiff thereupon entered into negotiations with Walter E. Schott," which resulted in Schott purchasing the business.

The plaintiff alleged also that he was excluded in the final negotiations, and, for that reason, did not know the price or the terms of the sale. However, he alleged

that he had done all that he was required to do and prayed for judgment for $10,000.

The defendant entered a general denial.

It developed at the trial from the testimony of the plaintiff that in 1950, up to March 15th, he had been in the employ of Walter E. Schott and that it was as Schott's agent and upon his express direction that plaintiff initiated negotiations with the defendant for the purchase of his business.

Early in February 1950, the plaintiff obtained an offer from defendant to sell his business to Schott for $250,000, which he later indicated he would reduce by $7,000 or $7,500. This was reported to Schott by the plaintiff, but Schott said the price was too high. This rejection was reported to the defendant about the middle of February 1950. Upon being informed of the rejection the defendant said, "Skip it, forget about it." And this was reported to Schott, his employer, by the plaintiff.

Prior to March 15th, the plaintiff was a salaried employee of Schott. On that date his salary ceased, but it is clear that thereafter for some time there was some sort of a business relation existing between them. The plaintiff was furnished with or permitted to occupy as an office a room in a building owned by Schott, and devoted a part of his time to selling time-recording clocks, for which he received a commission from Schott.

While the plaintiff was a salaried employee of Schott, he made a survey of several automobile agencies located in Cincinnati for his employer, and reached the conclusion that upon the cessation of his employment by Schott he would engage in the business of a broker, selling, among other things, automobile agencies, using the information that he had acquired in making the investigation for Schott.

Sometime near March 24, 1950, the plaintiff called

at defendant's place of business and told the defendant that he had severed business relations with Schott and discussed with him the best method of selling his business. He recommended to the defendant that he try to sell the material, equipment, and stock for cash and rent the real estate upon which the business was conducted on a long-term lease, as under that plan the purchaser would not be required to pay so large an amount in cash at once, and also there would be a saving in income taxes. He testified that he convinced the defendant of the merits of the plan, whereupon the defendant asked: " 'How much would a deal like that cost me?' I said, 'You know when we sell businesses it is usually a ten per cent commission on businesses, in fact, there is ten per cent on the business form we use.' He said: 'That is a lot of money.' I said, 'Yes, I know that.' I said: 'I tell you what I will do, if we can come up with a deal, I will do it for $10,000.' He looked at me and he says, 'O.K.' " The defendant imposed the condition that the plaintiff was not to make this offer to anyone unless and until the defendant gave his consent. He gave his consent that the plaintiff might approach one Schain and submit the proposal to him. The plaintiff did so, but no agreement was reached with him.

While he was negotiating with Schain he also talked to Schott. This occurred about the first of April, 1950, apparently in a conversation about business matters generally. On this subject, the conversation ran: "Walter I think you missed a good bet in not going further into that Honerkamp deal. He said, 'Charley, it is too much money. It is out of the question.' I said, 'Ed, in the meantime I have been in touch with Mr. Honerkamp and I have gotten Andy Schain interested in the agency out there.' He said, 'You have?' I said, 'Yes,' and I said, 'I have also been able to talk

with Mr. Honerkamp and convince him that maybe a long term lease arrangement with that building out there and buying the physical assets, such as equipment and so forth might work out a pretty good deal. I think you passed a good deal up.' He said, 'I didn't know anything about that. Why didn't you tell me about it?' I said, 'You have been away. I haven't seen you, and that is the story out there.' He said, 'Gosh, I would be very much interested in that.'"

Upon Schott's suggestion that they call on defendant, he called defendant by telephone and said to him: "We have got Mr. Schott showing a lot of interest in this; he just asked me if I couldn't call you and make arrangements to meet you." To this, the defendant answered, "Sure, come on out."

The plaintiff testified that as a result of this conversation, he and Schott went to the place of business of Honerkamp Motor Sales, Inc., consulted with the defendant, inspected the establishment and discussed the possibility of making a sale of the business with a long-term lease of the building, but no agreement was reached.

The defendant left for Florida the next morning after this meeting and did not return until April 23rd. While defendant was in Florida, Walter Schott, Jr., told the plaintiff his father was going to Florida and asked the plaintiff for defendant's address which he gave him. The plaintiff telephoned to the defendant in Florida and told him that Schott, Sr., was in Florida, had asked for his address, and might call on him. He also told him of his continuing conversations with Schain and that Schain had asked him to request the defendant not to do anything or close the deal until they could have another meeting. He also testified that "there were two after it and one of them ought to surely take it." To this the defendant said, "O.K."

However, Schott, Sr., did not call upon the defendant in Florida.

After the defendant's return from Florida, the plaintiff had no further conversation with him relative to Schott as a prospective purchaser, and learned of the sale to Schott only after the event. Two of Schott's associates did talk to him about the defendant's business. The plaintiff testified to incidents which he construed as indicating a studied avoidance of him by the defendant and Schott.

The defendant testified that it was expressly stated that the plaintiff was to receive no compensation from him in the event of a sale to Schott.

The important provisions of the sale to Schott were agreed to about May 1, but evidently there were some details that were not concluded until near July 1, when the documents were executed.

An examination of the documents discloses that the contract contains none of the terms of a long-term lease as contemplated by the plaintiff and defendant. On the contrary, it discloses a rather studied effort to give to the defendant a cash payment about equal to defendant's original proposal made to Schott through the plaintiff while plaintiff was without doubt Schott's agent and not defendant's agent.

The contract, as agreed upon by the defendant and Schott, without any participation on the plaintiff's part, provided that defendant would sell all the capital stock of Honerkamp Motor Sales, Inc., an Ohio corporation, for the sum of $200,000, as follows: $20,-000 upon the execution of the contract; $100,000 ten days thereafter, and $80,000 upon clearance by the Internal Revenue Department of payment of all taxes. Those were the main terms, but there were many provisions of a minor nature, one of which was that defendant would not engage in a competing business

for five years within a distance of 50 miles. At the same time another contract was entered into, whereby the buyer employed the defendant for a period of two years at a salary of $1,000 per month, and a payment of $10,000 at the expiration of the contract of employment. The buyer also agreed to employ the defendant's son for two years at a salary of $275 per month.

It will be noted that plaintiff had no exclusive agency to sell the defendant's business. It will be noted also that he had no general authority to go into the market seeking a buyer. In fact, his only authority was to negotiate with Schain in an effort to sell to him on a long-term lease basis. Before he could submit any proposal to any other prospective buyer it was necessary for him to obtain defendant's consent. In other words, his agency was special, and his authority had to be conferred in each instance.

It should be noted also that in the beginning the plaintiff was the prospective buyer's agent and approached the defendant in that capacity. Had Schott accepted at that time the offer which the plaintiff induced the defendant to make, or as modified, the plaintiff certainly would have had no basis for a claim for a commission against the defendant. The question is whether the plaintiff, by ceasing to be Schott's agent and obtaining the special authority to sell, is now entitled to a commission from the seller on a sale that resulted from negotiations initiated by him as agent for the buyer.

As already noted, the plaintiff alleged that he produced a ready, willing, and able purchaser and founds his right to a commission thereon. However, for those facts to be effective to fasten a liability upon the defendant it must appear that the purchaser was produced during the term of the broker's employment and while acting for and on behalf of the seller. If the pur-

chaser was produced before the commencement of his employment by the buyer, and while he was acting for the seller, it is manifest that no obligation of the seller is shown.

We have already analyzed the evidence in this record and have failed to find any substantial evidence from which a reasonable inference could be drawn that plaintiff and defendant either expressly or impliedly agreed that the plaintiff should have a commission on a sale to Schott on terms resulting from modification of the original proposal, brought about by negotiations between defendant and Schott, in which plaintiff did not participate.

We have concluded that the court erred in overruling the defendant's motions for an instructed verdict and for judgment. It is therefore unnecessary to pass upon the other assigned errors.

For these reasons, the judgment is reversed, and final judgment entered for the defendant.

*Judgment reversed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.